UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIN J. BOOSE, | ) | Case No. 3:16cv2368 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JACK ZOUHARY |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Erin J. Boose ("Boose" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits and a Period of Disability under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

1

I.  PROCEDURAL HISTORY

On May 6, 2013, Boose applied for Disability Insurance Benefits and a Period of Disability. (R. 11, PageID #: 277, 75.) Boose stated that she became unable to work on March 1, 2012. (R. 11, PageID #: 264, 75.) Boose's application was denied initially and upon reconsideration. (R. 11, PageID #: 188-199, 200-213.) Thereafter, Boose filed a written request for a hearing before an administrative law judge ("ALJ"). (R. 11, PageID #: 222-224.)

The ALJ convened a hearing on February 23, 2015, at which Boose appeared without counsel. (R. 11, PageID #: 104-126.) The ALJ sought information concerning medical records, advised Boose to consider retaining counsel, and continued the hearing. *Id.* A second hearing was held on May 22, 2015. Boose appeared at the hearing, was represented by counsel, and testified. (*Id.* at 128-187.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 128, 152-161, 179-186.)

On June 15, 2015, the ALJ issued his decision, applying the standard five-step sequential analysis to determine whether Boose was disabled. (R. 11, PageID #: 72-88; *see generally* 20 C.F.R. § 404.1520(a).) Based on his review, the ALJ concluded Boose was not disabled. (R. 11, PageID #: 75, 88.)

The Appeals Council denied Boose's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 11, PageID #: 57-60.) Boose now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

## II. PERSONAL BACKGROUND INFORMATION

Boose was born on July 5, 1980, and was 32 years old on the date last insured. (R. 11, PageID #: 277, 264, 87.) Accordingly, Boose was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 404.1563(c). Boose completed high school, graduated college with two degrees in 2012, and she is able to communicate in English. (R. 11, PageID #: 79, 282, 280.) Boose has past relevant work as a cashier checker, roll sheeting cutter, and work equivalent to[1] an operating engineer apprentice. (R. 11, PageID #: 86.)

## III. RELEVANT MEDICAL EVIDENCE[2]

Disputed issues will be discussed as they arise in Boose's brief alleging error by the ALJ. As noted earlier, she applied for disability benefits on May 6, 2013. (R. 11, PageID #: 277, 75.) Boose listed her physical or mental conditions that limit her ability to work as "bi-polar plus depression; back, leg, [and] arm pain." (R. 11, PageID #: 281.)

Boose does not dispute any issues concerning her physical health. Regarding her mental health, Boose had been seen at Coleman Psychiatry ("Coleman") since at least 2010. (R. 11, PageID #: 380.) At a January 31, 2011, follow-up appointment with nurse practitioner ("NP") Christopher Kalb, Boose reported that, after an increase in her Paxil dose the previous month, the

---

[1] The VE testified that the work Boose had performed as a "CAD operator" did not fit exactly into any of the DOT titles, but operating engineer apprentice was a close equivalent. (R. 11, PageID #: 158-160, 154-156.)

[2] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignment of error raised.

3

Paxil was "working wonderfully," she felt more relaxed and her anxiety was reduced. Boose stated overall "she has been doing wonderfully." (*Id.*) She denied depression, her appetite was good, and she was sleeping well. *Id.*

During an April 18, 2011, follow-up appointment with NP Kalb, Boose reported Paxil was continuing to work well, and she denied any side effects. (R. 11, PageID #: 386.) At a July 25, 2011, follow-up with NP Kalb, Boose reported Paxil was continuing to work well, and she denied any depression or side effects. *Id.* at 391. Similarly, at follow-up appointments on December 12, 2011, and May 21, 2012, Boose reported Paxil was continuing to work well, without any depression or side effects. *Id.* at 396, 401. At the May appointment, Boose reported that her appetite was good, she was sleeping well, and she was graduating from college in June 2012. *Id.* at 401.

At an October 15, 2012, follow-up appointment for medication management with NP Kalb, Boose reported that Paxil was "working OK," but she requested a slightly increased dose for a "slight depressed mood," which Boose attributed to her inability to "find a job and just graduated from college." (R. 11, PageID #: 406.) Otherwise, her appetite was good and she was sleeping well. She received an increased dosage of Paxil. *Id.*

On November 12, 2012, Boose reported to NP Kalb that the increased Paxil decreased her depression, she denied any side effects, said her appetite was good and she was sleeping well. (R. 11, PageID #: 411.) In addition, she reported Paxil was working well at the current dosage at December 10, 2012, and January 28, 2013, visits, where she also denied side effects or depression. She noted that she was still looking for employment. *Id.* at 416, 421.

4

During a March 25, 2013, follow-up visit for medication management, Boose denied any side effects or depression, said her appetite was good, but that she was having trouble sleeping, which Boose related to chronic pain. She was "living with her mother and they have conflict and stress." (R. 11, PageID #: 427.) She was having financial issues and reported she "planned to apply for mental health disability." (*Id.*) Boose refused counseling. (*Id.*)

Boose did meet with a social worker, Lisa Wagner, LISW, at Kenton Community Health Center on April 11, 2013. (R. 11, PageID #: 476-478.) Wagner assessed Boose as moderately anxious. *Id.* at 476. Wagner ordered psychotherapy and gave instructions for a number of coping techniques. *Id.* at 477-478.

During a May 20, 2013, medication management appointment, at Coleman, Boose requested a change in medication to Cymbalta which she stated had worked well in the past for her pain and depressed mood. She reported she had filed for disability. (R. 11, PageID #: 434.) She refused counseling. (*Id.*) Boose was to taper off Paxil and begin Cymbalta. *Id.* at 434, 376. On June 10, Boose reported she felt no different. Dosage for Cymbalta was increased. She again refused counseling. *Id.* at 440.

Boose visited a nurse at Coleman on July 3, 2013, and reported sleeping well, with no issues of increased depression or anxiety. (R. 11, PageID #: 479.) Several days later, at a July 8 follow-up with NP Kalb, Boose said she did not like the way Cymbalta made her feel, and she wanted to return to Paxil. *Id.* at 496. She continued to refuse counseling. *Id.* On July 29, Boose reported that her depression was much less since returning to Paxil. *Id.* at 508.

On August 1, 2013, the state agency reviewing psychologist, Paul Tangeman, Ph.D., completed a Psychiatric Review Technique ("PRT") assessment for Boose, indicating that Boose

5

had moderate difficulties in maintaining concentration, persistence or pace. (R. 11, PageID #: 191.) He referred to the MRFC ("Mental Residual Functional Capacity" assessment) for additional explanation. *Id.*

Dr. Tangeman completed the MRFC that same day, August 1, 2013. (R. 11, PageID #: 194-196.) Although Dr. Tangeman opined that Boose had "sustained concentration and persistence limitations," he assessed that she was "not significantly limited" in her ability to maintain attention and concentration for extended periods; "not significantly limited" in her ability to work in coordination with others or in proximity to others without being distracted by them; and, "not significantly limited" in her ability to complete a normal workday and workweek without interruptions from her psychological symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 195. Dr. Tangeman assessed that there was no evidence of limitation in the other concentration and persistence categories. *Id.*

Dr. Tangeman assessed that Boose was moderately limited in her ability to respond appropriately to changes in the work setting. (R. 11, PageID #: 196.) In addition, he stated due to Boose's adaptation limitations she should be "limited to an environment without strict time demands and where changes in routine could be explained." *Id.*

On reconsideration, the reviewing physician, David Demuth, M.D., completed a PRT assessment on September 27, 2013. His assessment, like Dr. Tangeman, indicated that Boose had moderate difficulties in maintaining concentration, persistence or pace, and cross-referenced his MRFC for additional explanation. (R. 11, PageID #: 204.) Dr. Demuth's MRFC was largely identical to Dr. Tangeman's, finding, for example, that Boose was "not significantly limited" in her ability to maintain attention and concentration for extended periods. *Id.* at 208. However, Dr.

6

Demuth found Boose was "not significantly limited" in her ability to sustain an ordinary routine without special supervision (whereas Dr. Tangeman found no evidence of this); and Boose was "moderately limited" in her ability to complete a normal workday and workweek without interruptions from her psychological symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Demuth stated that the effect of Boose's sustained concentration and persistence limitations would be that her mental health issues "would cause reduced stress tol[erance] but residual remains to complete detailed tasks." *Id.*

Dr. Demuth concurred with Dr. Tangeman's assessment that Boose was moderately limited in her ability to respond to changes in the work setting. (R. 11, PageID #: 209.) Dr. Demuth set forth the same limitation, indicating she should be "limited to an environment without strict time demands and where changes in routine could be explained." *Id.*

On October 30, 2013, Margaret Mesker, LPN, of Coleman contacted Boose about her Medicaid mental evaluation. (R. 11, PageID #: 601-603.) Boose stated that she had lumbar pain and wanted a prescription for Topomax. *Id.* at 603. Also, she was upset that her diagnosis was depression, and wanted the diagnosis changed to bipolar. *Id.* She reported her medications "don't work." *Id.* At a November 11, 2013, follow-up appointment with NP Kalb, however, Boose said that her current medications were working OK, but she wanted Topomax for pain. *Id.* at 609. She denied depression, said her appetite was good, and she was sleeping well. *Id.* She reported, "things are still chaotic at home." Boose continued to refuse counseling. *Id.* Boose stated she continued "to do her reptile shows in Cleveland and Columbus." *Id.*

7

Boose had a consultative psychological examination with Don McIntire, Ph.D., on January 30, 2014. (R. 11, PageID #: 725-729.)[3] Boose reported to Dr. McIntire that she was applying for benefits because of her pain and her depression. *Id.* at 725. He noted Boose's education, college degrees, and work experience. She reported to Dr. McIntire that she had no problems learning her jobs, concentrating on her work, or remembering procedures. She had difficulties "coping with speeded task requirements when she was depressed," and had "no difficulties in getting along with others." She was able to accept changes in her routine. *Id.* at 726.

Boose reported to Dr. McIntire that she was taking Topomax, which helps with her headaches and anxiety. (R. 11, PageID #: 726, 728.) Boose reported she had no difficulty with long-term memory, but that she had mild difficulties with short-term memory. *Id.* at 728. Dr. McIntire diagnosed Boose—based on Boose's self-reporting and his evaluation—with major depression, single episode, severe, without psychotic features, and mild social phobia. *Id.* at 729.

That same date, January 30, 2014, Dr. McIntire completed a check-box Mental Functional Capacity Assessment form on Boose. (R. 11, PageID #: 761.) The psychologist checked that Boose was "markedly limited" in her ability to maintain attention and concentration for extended periods; and in her ability to complete a normal workday without interruptions from her psychological symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* He checked the box that he believed Boose was

---

[3] Boose does not contest the ALJ's assignment of "little weight" (R. 11, PageID # 84) to the opinion of Dr. McIntire. *See, e.g.* R. 12, PageID # 925-926.

unemployable, and that her mental limitations were expected to last between 30 days and 9 months. *Id.*

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his June 15, 2015, decision:

> 1. The claimant last met the insured status requirements of the Social Security Act through March 31, 2013.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 1, 2012[,] through her date last insured of March 31, 2013 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: morbid obesity; an affective disorder; an anxiety disorder; fibromyalgia; and osteoarthritis of the knees and back (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She could sit for 6 hours of an 8-hour workday and could stand and walk for 4 hours of an 8-hour workday. She could use her extremities to push and pull without limitation, except to the extent frequency and weight restricted in her capacity to lift and carry. She could frequently balance. She could occasionally climb ramps and stairs as well as occasionally stoop, kneel, crouch, and crawl. She could perform work that did not require her to climb ladders, ropes, or scaffolds, or require her to be exposed to unprotected heights or to hazardous machinery. She could perform work in an environment without strict time demands where changes could be explained.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 5, 1980[,] and was 32 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 25, 2010, the date the application was filed (20 CFR 416.020(g)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 1, 2012, the alleged onset date, through March 31, 2013, the date last insured (20 CFR 404.1520(g)).

(R. 11, PageID #: 77-78, 80-81, 86-88.)

## V. DISABILITY STANDARD

A claimant is entitled to receive disability insurance benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

10

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Comm'r Soc. Sec. Admin.,* 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r Soc. Sec. Admin.*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec. Admin.*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a

11

reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII. ANALYSIS

Boose presents the following legal issue for the court's review: "The ALJ's decision should be reversed because he failed to incorporate mental health limitations that the ALJ expressly adopted in his decision." (R. 12, PageID #: 918.) Boose argues that the ALJ stated he was affirming and adopting the opinions of the state agency psychological consultants, but she contends he did not incorporate all of their opined limitations into his decision. *Id.* at 922, citing R. 11, PageID #: 85. Boose claims that, because the ALJ's Residual Functional Capacity ("RFC") determination did not consider multiple limitations opined by state agency doctors, it is not supported by substantial evidence and does not represent an accurate depiction of Boose's

12

functionality. *Id.* at 922-923.

A claimant's RFC is defined as the most the claimant can do, despite the limitations caused by physical and mental impairments. 20 C.F.R. § 1545(a)(1); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2. In determining a claimant's RFC, the ALJ considers the limiting effects of all of the claimant's impairments, even those that are not severe. 20 C.F.R. § 1545(e); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must "articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r Soc. Sec. Admin.,* No. 00-4200, 2002 WL 343402, at *4 (6th Cir. Mar. 4, 2002) (quoting *Bencivengo v. Comm'r Soc. Sec. Admin.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)).

The ALJ must provide the finding at each step in a manner that permits meaningful review of the decision. *Snyder v. Comm'r Soc. Sec. Admin.,* No. 5:13CV2360, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014). In other words, the ALJ's decision "must build an accurate and logical bridge between the evidence and his conclusion." *Snyder*, 2014 WL 6687227, at *10 (quoting *Woodall v. Colvin*, No. 5:12CV1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013).) The ALJ's decision in this case sufficiently complied with those standards.

Boose's sole challenge to the ALJ's decision focuses on his consideration of opinions from state agency psychological consultants. The ALJ's decision indicates:

> I affirm and adopt the opinions of the State agency medical and psychological consultants in the initial and reconsideration determinations because they are well supported by the totality of the medical evidence and with the claimant's reported activities.

13

(R. 11, PageID #: 85.) Boose contends that, with that statement, the ALJ "adopted their limitations of moderate difficulties in maintaining attention, concentration and pace; and a moderate impairment in completing a normal workday or workweek." (R. 12, PageID #: 923.) But she argues that the ALJ failed to incorporate those mental health limitations into the analysis, and committed error. The court does not agree.

The consultants in question are psychologist, Dr. Tangeman, who conducted the initial assessment (R. 11, PageID #: 191, 194-196), and reviewing physician, Dr. Demuth, on reconsideration (*id.* at 204, 209). In assessing Boose's medically determinable impairments and severity, Dr. Tangeman's PRT assessment found, under the B criteria of the Listings, that Boose had moderate difficulties in maintaining attention, concentration and pace. (R. 11, PageID #: 191.)

Of course, SSR 96-8p provides that the limitations identified in the B criteria are not an RFC assessment, but are simply used to rate the severity of mental impairments at steps 2 and 3. SSR 96-8p, 1996 WL 374184, at *4. An "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Comm'r Soc. Sec. Admin.*, 805 F.3d 1199, 1203 (10th Cir. 2015); *see also Koster v. Colvin*, No. 1:13CV2719, 2015 WL 413795, at *12-*13 (N.D. Ohio Jan. 30, 2015), *aff'd by* 2016 WL 374080 (6th Cir. Feb. 1, 2016); *Allen v. Colvin*, No. 3:15-00947, 2016 WL 7664310 (M.D. Tenn. Nov. 17, 2016), *adopted by* 2017 WL 67986 (M.D. Tenn. Jan. 6, 2017) (quoting *Vigil*). The mental RFC assessment used at steps 4 and 5 requires a more detailed assessment. SSR 96-8p, 1996 WL 374184, at *4.

14

Dr. Tangeman's MRFC assessment was that, although Boose had sustained concentration and persistence limitations, she was "not significantly limited" in her ability to maintain attention and concentration for extended periods; in her ability to work in coordination with others or in proximity to others without being distracted by them; and, in her ability to complete a normal workday and workweek without interruptions from her psychological symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 11, PageID #: 195.) Dr. Tangeman assessed that there was no evidence of limitation in the other concentration and persistence categories. *Id.*

Although Boose's brief (R. 12, PageID #: 923) focuses on the concentration and persistence limitations, Dr. Tangeman also assessed that Boose was moderately limited in her ability to respond appropriately to changes in the work setting, and that the effect of her adaptation limitations would be that she should be "limited to an environment without strict time demands and where changes in routine could be explained." (R. 11, PageID #: 196.) Dr. Tangeman did not provide any specific work-related limitations based on concentration and persistence. *Id.* at 195-196.

Dr. Demuth's PRT assessment, concerning Boose's medically determinable impairments and severity, found that under the B criteria of the Listings, Boose had moderate difficulties in maintaining attention, concentration and pace. (R. 11, PageID #: 204.) Dr. Demuth's MRFC was largely identical to Dr. Tangeman's, with two exceptions: (1) Boose was "not significantly limited" in her ability to sustain an ordinary routine without special supervision (whereas Dr. Tangeman found no evidence of this); and, (2) Boose was "moderately limited" in her ability to complete a normal workday and workweek without interruptions from her psychological

15

symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods (whereas Dr. Tangeman found she was "not significantly limited" in this ability). *Id.* at 208. In addition, Dr. Demuth stated that the effect of Boose's sustained concentration and persistence limitations would be that her mental health issues "would cause reduced stress tol[erance] but residual remains to complete detailed tasks." *Id.*

Dr. Demuth concurred with Dr. Tangeman's assessment that Boose was moderately limited in her ability to respond to changes in the work setting. (R. 11, PageID #: 209.) In addition, Dr. Demuth set forth the same limitation, indicating she should be "limited to an environment without strict time demands and where changes in routine could be explained." *Id.*

The ALJ concluded that "[t]he medical evidence supports the finding that the claimant is capable of performing a reduced range of light, unskilled work." (R. 11, PageID #: 86.) He continued:

> The limitation to work in settings in an environment without strict time demands where changes in routine could be explained accommodates her depression and anxiety symptoms. A more restrictive finding is not supported by the documented medical treatment or by any credible opinion evidence of record.

(R. 11, PageID #: 86.)

Boose protests that, although her moderate limitations in maintaining concentration, persistence, and pace were recognized by the ALJ and the agency psychologists, "those opinions carried no work-related functional limitations." (R. 15, PageID #: 950.) As discussed above, Dr. Tangeman did not provide any specific work-related limitations based on concentration and persistence. *Id.* at 195-196. Dr. Demuth determined that Boose had the residual capacity to complete detailed tasks, but otherwise did not provide any specific work-related limitations based on concentration and persistence. *Id.* at 208. The ALJ's RFC incorporated Dr. Tangeman

16

and Dr. Demuth's opinions that she was moderately limited in her ability to respond to changes in the work setting: "She could perform work in an environment without strict time demands where changes could be explained." *Id.* at 81. In addition, the ALJ's hypothetical question to the VE properly reflected these opinions. *Id.* at 180. *See generally Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (ALJ properly incorporated "only concrete restrictions available to him" into hypothetical); *Koster*, 2015 WL 413795, at *12-*13; *Bielat v. Comm'r Soc. Sec. Admin.,* 267 F. Supp. 2d 698, 702 (E.D. Mich. 2003) (ALJ's hypothetical question to VE should incorporate specific references to job-related restrictions, not the sort of broad limitations the ALJ finds at steps 2 and 3 in determining whether a claimant has a severe impairment).

Boose also argues that the ALJ's RFC falls short of accommodating for moderate deficiencies in maintaining concentration, persistence and pace. (R. 12, PageID #: 925, citing *Ealy v. Comm'r Soc. Sec. Admin.,* 594 F.3d 504, 516 (6th Cir. 2010), and other cases.) In *Ealy*, a state agency psychological consultant opined that the claimant retained the mental ability to understand and remember simple instructions; to sustain attention to complete simple repetitive tasks for two-hour segments during a workday, where speed was not critical; and to adapt to routine changes in a simple work setting. *Ealy*, 594 F.3d at 509. The *Ealy* court noted that the ALJ's hypothetical omitted the speed- and pace-based restrictions entirely, and should have included the restriction to two-hour segments, and that speed could not be critical to his job. Thus, the court found that the claimant's limitations were not fully conveyed to the vocational expert. *Ealy*, 594 F.3d at 516. *Ealy* is more limited than Boose represents, and does not stand for a broader proposition that the Sixth Circuit does not accept a limitation of 'simple' work as a sufficient incorporation of a claimant's moderate deficiencies in concentration, persistence, or

17

pace. In addition, the ALJ's RFC, in Boose's case, fully incorporated the work-related limitations specified by Dr. Tangeman and Dr. Demuth.

## IX. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. The record evidence as discussed in the ALJ's decision is such that "a reasonable mind might accept [it] as adequate" support for the Commissioner's final benefits determination. *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401). Accordingly, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.

Date: June 30, 2017

s/*David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).